5 F.3d 543
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles L. TATUM, Jr., Defendant-Appellant.
 No. 92-10519.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 12, 1993.*
Decided Aug. 19, 1993.
 
 Appeal from the United States District Court for the Northern District of California; No. CV-91-00287-CAL, Charles A. Legge, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before: KOZINSKI, THOMPSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Charles Tatum was found guilty of possessing cocaine with intent to distribute, using and carrying a firearm during that offense and being a felon in possession of a firearm. See 18 U.S.C. Secs. 922(g)(1), 924(c); 21 U.S.C. Sec. 841(a)(1).
 
 
 3
 A. Tatum claims the initial stop of his vehicle was pretextual and the subsequent search and seizure in violation of his Fourth Amendment rights. After holding a hearing, the district court found that the stop was not pretextual. ER 64. We cannot say this finding was clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) (findings of fact based on credibility are given special deference). Tatum's registration had expired, id., and both officers testified that was the reason for pulling him over.
 
 
 4
 Tatum next argues that, even if the stop was legitimate, the ensuing arrest and search of the vehicle were not. He claims the police officer could not possibly see the gun barrel sticking out from under the driver's seat, given his vantage point outside the car. Once again, we have the benefit of specific findings by the district court. The officer testified he saw Tatum move as if to place something under the seat; after approaching the car the officer shined his light into the car and spotted the barrel of a gun protruding from under the seat. ER 64-65. Although Tatum argued to the court that the officer could not have seen the gun, the court found otherwise. The court examined the car, ER 64, and specifically considered--and rejected as unpersuasive--Tatum's video re-enactment of the scene of the arrest. See ER 65-66. After seeing a weapon in plain view inside the vehicle, the officers had probable cause to arrest Tatum. See Calif.Penal Code Secs. 12025(a), 12031. Once Tatum was arrested, the cocaine and weapon were seized in a valid search incident to arrest. See Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Turner, 926 F.2d 883, 887 (9th Cir.1991).
 
 
 5
 B. Tatum also appeals four of the district court's evidentiary rulings. We review only for abuse of discretion. United States v. Wales, 977 F.2d 1323, 1326 (9th Cir.1992).
 
 
 6
 Tatum first claims the district court erred by admitting into evidence cellular telephone records showing very high mobile phone usage in the car he was driving on the night of his arrest. He contends this evidence was irrelevant and went further than necessary to rebut his claim that he was hanging up his car phone, rather than concealing a firearm, when arrested. But the records were not just intended to rebut whether Tatum had been using the car phone; they were also to rebut Tatum's claim that the large amount of cocaine seized from his car was for personal use. The government offered competent expert testimony that pagers and cellular phones are often used by drug dealers. RT 127-29. In the past, we have considered such evidence probative of drug dealing. See, e.g., United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987).
 
 
 7
 The district court also admitted testimony concerning cellular telephone records from the Chevrolet van used in Tatum's janitorial business. Tatum claims that these records were not relevant and that they prejudiced the jury. Yet this evidence was relevant to refute Tatum's defense to the firearm charge. Tatum's defense was that he carried the gun for self-defense because he had been shot two days earlier en route to a social engagement. Evidence of high mobile phone usage from the van Tatum drove on the night he was shot substantiated the government's version of events, i.e., Tatum was shot in an attempted drug rip-off, not as an innocent victim.
 
 
 8
 Tatum next argues the district court improperly allowed the government to elicit rebuttal testimony from his grandmother to the effect that Tatum had her remove contraband and other evidence from Tatum's van before it was surrendered to the police. Again, Tatum invited testimony about the van by claiming he was using it for legal purposes on the night he was shot; the rebuttal evidence--testimony that the van was thoroughly cleaned before turning it over to the police--tends to prove Tatum was using the van for illegal activities. Cf. United States v. Felix-Gutierrez, 940 F.2d 1200, 1207-08 (9th Cir.1991) (evidence of defendant's flight generally admissible as evidence of guilt).
 
 
 9
 Finally, Tatum argues the court erred in admitting testimony that his friend, Robert Sultan, was arrested carrying two handguns and a large amount of cash. Tatum claims the government introduced this evidence to tarnish Tatum's credibility by associating him with an unsavory character. But Tatum invited that testimony by arguing he possessed the gun only for self-defense. Evidence showing that Sultan had been Tatum's confederate and that Tatum's injuries occurred during an attempted drug rip-off rebutted Tatum's claim that he had been shot while paying a social visit to Sultan's house. Since the guns and cash suggested criminal activity on the part of Sultan, see, e.g., United States v. $215,300 U.S. Currency, 882 F.2d 417, 419 (9th Cir.1989); United States v. Martin, 599 F.2d 880, 889 (9th Cir.1979), they tended to rebut Tatum's defense and were therefore admissible.
 
 
 10
 C. Tatum also appeals from the denial of his requested jury instruction on the 18 U.S.C. Sec. 924(c) charge. He argues the court should have instructed the jury that it must find Tatum "possessed the gun as an offensive weapon for the specific purpose of selling and trafficking cocaine." See ER 68. We review de novo whether the court's other instructions adequately covered Tatum's theory of the case. See United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992).
 
 
 11
 To convict Tatum, the jury need only have found that he carried a firearm "during and in relation to any ... drug trafficking crime." 18 U.S.C. Sec. 924(c)(1). Section 924(c)(1) does not require possession of the gun as an "offensive weapon" nor that it be for the "specific purpose" of selling and trafficking cocaine. See, e.g., Smith v. United States, 61 U.S.L.W. 4503 (U.S. June 1, 1993) (No. 91-8674); United States v. Torres-Medina, 935 F.2d 1047 (9th Cir.1991); United States v. Guy, 903 F.2d 1240, 1243 (9th Cir.1990). The district court properly refused to give the proposed instruction since it misstates the law.
 
 
 12
 Tatum also argues, for the first time on appeal, that the instructions given by the court did not adequately explain it was possible to convict Tatum on the possession charge but acquit him on the firearm charge. Instructions which are not objected to below are reviewed only for plain error. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991); United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989). The district court instructed the jury to view each count of the indictment as a separate crime and decide each count separately. RT 455. The court fully instructed the jury on the elements of Section 924 and defined the operative statutory phrases. The instructions given specifically admonished the jury that it could convict only if it found that the presence of the gun had some relation or connection to the drug offense. RT 460-61. There was no error, let alone plain error, in these instructions.
 
 
 13
 D. Finally, Tatum argues the district court erred by failing to depart downward at sentencing, in light of the court's recognition that Tatum suffered a lack of meaningful guidance as a youth. See RT 8/21/92 at 13-14. Discretionary refusals to depart downward are not reviewable. E.g., United States v. Shrewsberry, 980 F.2d 1296, 1298 (9th Cir.1992).
 
 AFFIRMED
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3