17 F.3d 397
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick H. HOWARD, Defendant-Appellant.
 No. 92-10166.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 20, 1993.*
Decided Jan. 7, 1994.
 
 Before: SNEED, NOONAN, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Frederick H. Howard appeals his sentence under the Sentencing Guidelines following his guilty plea to unlawfully using access devices in violation of 18 U.S.C. Sec. 1029(a)(2) and aiding and abetting in violation of 18 U.S.C. Sec. 2. Howard contends that the government's refusal to move for a downward departure in sentence based on his substantial assistance was arbitrary and capricious and violative of his due process rights. He further contends that the district court erroneously believed it did not have authority to depart below the statutory minimum sentence absent a government motion for downward departure. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Defendant-Appellant Frederick H. Howard was involved in a conspiracy to defraud Citibank by gaining access to credit card customer information from the Citibank computer, ordering additional credit cards in the names of fictitious persons who were added to the accounts of existing credit card customers, and using those cards to purchase goods and services. On February 22, 1991, a criminal complaint was filed against Howard and three others in the United States District Court for the Northern District of California. They were charged with conspiring to defraud Citibank by use of unauthorized access devices in violation of 18 U.S.C. Sec. 1029(a)(2) and aiding and abetting in violation of 18 U.S.C. Sec. 2. Howard was indicted on these charges on March 25, 1991.
 
 
 4
 Howard entered a plea of guilty on September 6, 1991. In the written plea agreement, the government promised not to recommend an upward departure from the Sentencing Guidelines. At the plea hearing, the district court established that the only promise made by the government in exchange for the guilty plea was that it would not recommend an upward departure. After the plea was entered but before sentencing, Howard voluntarily provided information to United States Postal Inspectors about other people involved in credit card fraud. The information led to the arrests and convictions of two people.
 
 
 5
 On February 7, 1992, Howard appeared for sentencing. The government submitted a sentencing memorandum recommending that Howard receive a sentence at the low end of the Guidelines range. In pertinent part, this memorandum states:
 
 
 6
 The defendant was on probation, following a conviction suffered in 1988, for credit card fraud when he again began a scheme to use other person's credit to obtain cash, goods and services to support himself. The defendant apparently did not feel the need to seek legitimate employment, as he reports having no job since 1988.
 
 
 7
 As part of this current scheme, which resulted in a loss of over $100,000, the defendant directed other persons to assist him in obtaining (and then using) confidential credit information.
 
 
 8
 After the defendant was arrested he was extremely cooperative with law enforcement, and bank fraud investigat[ors], involved in this case. He even went so far as to provide unsolicited information that has led to prosecution of two other individuals for similar crimes.... The government is recommending that the defendant be sentenced at the low end of the guidelines, rather than some higher sentence, to account for the defendant's unusual assistance. However, this defendant's conduct does not warrant a motion for downward departure and he is not deserving of any more leniency than a low-guideline sentence.
 
 
 9
 This defendant appears to be an incorrigible criminal. There is nothing in his background, as detailed in the PSR, that suggests the defendant has seen the error of his ways and has decided to live a lawful life. The government is mindful of the defendant's difficult upbringing and the other mental and emotional factors described in the PSR. However, while this defendant may have had a more difficult childhood than most, it does not excuse, or even explain, why he feels that innocent and unsuspecting victims should have their credit histories affected, and sometimes ruined, because he has chosen to lead a life of crime. His background does not excuse or explain why he feels that banking institutions should bear the loss for his criminal conduct, nor why the public should bear the higher costs of credit, goods and services, that result from this kind of fraud.
 
 
 10
 The government concluded that a sentence of 21 months in prison would both punish Howard for his conduct and reward him for his cooperation.
 
 
 11
 At the sentencing hearing on February 7, 1992, Howard sought a continuance in order to prepare an argument that the district court can issue a downward departure on its own motion. The government responded to this request with the following:
 
 
 12
 I don't particularly object to a continuance. But if I could just set the record straight here, because I resent the implication that somehow the government has violated the defendant's due process rights by seeking his substantial assistance, receiving it, and then basically turning our back on him and saying, "You are not getting anything from us."
 
 
 13
 Mr. Howard is very upset he had to be convicted of this crime and that there were other people still out there committing crimes. And he voluntarily, on his own, unsolicited, without any action or initiation on the part of the government, or the fraud investigator, called up Mr. Wallace and said he had information about people who were committing credit card fraud.
 
 
 14
 Mr. Wallace contacted the postal inspector and me. I contacted defendant's counsel, Mr. Morris, and said: "Look, this is the situation. Your client says he has information. It sounds like it's good. We want to do a search warrant, but we are not going to promise him anything. If you don't want us to use that, with that understanding, we won't. We will just forget about it." Mr. Morris said: "Fine. You can go ahead and use the information."
 
 
 15
 We used the information. It was good. The search warrant was successful. And as a result, we have two additional people charged.
 
 
 16
 * * *
 
 
 17
 As a result of that cooperation and assistance, albeit unsolicited, I recommended a sentence that is at the low end of the guidelines rather than the high end of the guidelines.
 
 
 18
 Frankly, I would not only have recommended the high end of the guidelines, but if I could have justified an upward departure, I would have for this particular defendant.
 
 
 19
 Actually, Mr. Howard has gotten the benefit from the government because he is going to get--regardless of what the court does, he gets six months less than what I would have recommended.
 
 
 20
 At the hearing the district court granted a continuance so that Howard could prepare a memorandum in support of his motion for downward departure based on substantial assistance.
 
 
 21
 On February 18, 1992, Howard filed a motion for downward departure pursuant to U.S.S.G. Sec. 5K1.1, 18 U.S.C. Sec. 3553(b), and U.S.S.G. Sec. 5K2.0, p.s. The government filed its opposition on February 25, 1992. On February 28, 1992, the sentencing hearing was resumed. The district court denied Howard's motion, concluding that the government did not act arbitrarily and capriciously in deciding not to move for a downward departure and that its reasons for not moving "do not rise to a constitutional level." The district court sentenced Howard to a low-end Guidelines sentence of 21 months in prison, followed by a three-year period of supervised release, and restitution of $105,035.95. Judgment was final on March 4, 1992.
 
 
 22
 Howard filed his notice of appeal on March 9, 1992. On July 20, 1992, the government moved for summary affirmance of Howard's sentence. Howard filed his opposition on July 30, 1992. We denied the government's motion on August 17, 1992, and ordered the filing of briefs.
 
 II.
 JURISDICTION AND STANDARD OF REVIEW
 
 23
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Although a district court's discretionary refusal to depart downward from the Sentencing Guidelines is not reviewable on appeal, United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992), cert. denied, 113 S.Ct. 1665 (1993), its belief that it lacks the legal authority to depart downward under the Sentencing Guidelines is subject to review on appeal. See United States v. Mena, 925 F.2d 354, 355 (9th Cir.1991). Because the district court refused to grant a downward departure under U.S.S.G. Sec. 5K1.1 based on its belief that it lacked the power to consider such a departure in the absence of a government motion, we have jurisdiction over Howard's appeal.
 
 
 24
 We review de novo the district court's determination that it did not have the discretion under the Sentencing Guidelines to depart. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.1992), cert. denied, 113 S.Ct. 258 (1992).
 
 III.
 DISCUSSION
 
 25
 In this appeal Howard contends that the district court erred by upholding the government's "arbitrary and capricious" refusal to move for a downward departure based on his substantial assistance to the government. He also argues that the district court should have acted on its own authority to issue a downward departure. We address these contentions below.
 
 
 26
 Howard maintains that when a defendant has rendered "substantial assistance in the investigation or prosecution of another," the government may not refuse to recommend a downward departure from the range in the Sentencing Guidelines pursuant to U.S.S.G. Sec. 5K1.1[1] and 18 U.S.C. Sec. 3553(e)[2] for reasons that are arbitrary and capricious.
 
 
 27
 Both U.S.S.G. Sec. 5K1.1 and 18 U.S.C. Sec. 3553(e) explicitly condition a downward adjustment to a sentence upon a government motion. In the absence of a government motion for downward departure, a district court presumptively lacks the discretion to depart from the Guidelines. United States v. Vilchez, 967 F.2d 1351, 1355 (9th Cir.1992). A district court may depart from the range established by the Guidelines on its own motion only if the government's failure to move for downward departure is unconstitutionally motivated. Wade v. United States, 112 S.Ct. 1840, 1842 (1992); Vilchez, 967 F.2d at 1355.
 
 
 28
 "[T]he Government [has] a power, not a duty, to file a motion when a defendant has substantially assisted." Wade v. United States, 112 S.Ct. 1840, 1843 (1992). In Wade, the Supreme Court held that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." Id. The Court explained that "a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion." Id. at 1844. A defendant is not entitled to a remedy--or even to discovery or to an evidentiary hearing--if he claims that he merely provided substantial assistance or if he makes generalized allegations of the government's improper motive. Id.
 
 
 29
 Howard has failed to make a substantial showing that he is entitled to a downward departure in the absence of a government motion. He has not alleged that the government refused to file a motion for suspect reasons such as his race or his religion. Instead, he claims that the government violated his constitutional rights by refusing to move for a downward departure for reasons that are "arbitrary and capricious." According to Howard, it is arbitrary and capricious for the government "to decline to make a substantial-assistance motion based on the criminal history of the defendant giving such assistance." At the sentencing hearing, the district court neither found nor implied that the government acted with such arbitrariness or bad faith in refusing to move for a downward departure as to amount to a constitutional violation. Nothing indicated that the prosecutor acted irrationally or with an illicit motive.
 
 
 30
 Although Howard would be entitled to relief if the government's refusal to move for downward departure "was not rationally related to any legitimate Government end," Wade, supra, Howard has not provided any evidence nor made any allegations showing that the government acted improperly in refusing to file a motion. He asserts that if the government had made a substantial-assistance motion, he would have received a reduction in sentence. This, however, is not enough to allow the district court to act on its own discretion. A demonstration of assistance is a necessary--not a sufficient--condition for relief. Id. at 1844.
 
 
 31
 The government may decide not to move for a downward departure "simply on its rational assessment of the cost and benefit that would flow from moving" rather than due to a failure to acknowledge or appreciate the defendant's help. Wade, 112 S.Ct. at 1844. On numerous occasions the government clearly explained why it recommended a 21-month sentence, and nothing indicates any irrationality on the government's part or refusal to recognize Howard's assistance. First, the government explicitly stated in its sentencing memorandum the reasons for recommending a sentence at the low end of the Guidelines and for not moving for a downward departure.[3] Second, at the sentencing hearing on February 7, 1992, the government explained to the district court that because of Howard's unsolicited cooperation, it recommended a sentence at the low end rather than at the high end of the Guidelines range.[4] Third, the government's response to Howard's motion for a downward departure at the February 28, 1992, sentencing hearing included the benefit Howard received for his cooperation and the factors that made a downward departure inappropriate in his case.[5]
 
 
 32
 The government recognized Howard's assistance and chose to recommend a low-end sentence rather than a high-end sentence. Thus, its decision not to move for a downward departure was a "rational assessment of the cost and benefit that would flow from moving." Wade, 112 S.Ct. at 1844. There is nothing to suggest that the government ever promised to move for departure, thereby inducing Howard's assistance, nor is there any other indication of bad faith by the government. Moreover, because the government recommended a low-end sentence rather than a high-end sentence, Howard did receive some benefit for his cooperation.[6]
 
 
 33
 The district court correctly determined that the government had not acted in an unconstitutional manner in refusing to move for a downward departure.[7] Therefore, we affirm the district court's holding that it lacked the power to depart downward based on Howard's substantial assistance in the absence of a government motion.[8] A departure in this case would have amounted to "unwarranted interference with the discretion committed to the prosecution under section 5K1.1." United States v. Mena, 925 F.2d 354, 355 (9th Cir.1991).
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This section states:
 Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 U.S.S.G. Sec. 5K1.1.
 
 
 [2]
 This statute provides:
 Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as the minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.
 18 U.S.C. Sec. 3553(e).
 
 
 [3]
 See excerpts of this memorandum on pages three and four
 
 
 [4]
 See excerpts of the sentencing hearing transcript on pages four and five
 
 
 [5]
 Here are excerpts from the sentencing hearing transcript:
 Counsel has suggested over and over that my reasons for my sentencing recommendation have been capricious and arbitrary. And, frankly, I don't think he understands what those terms mean.
 I gave the court and counsel in my pleadings specific non-arbitrary, non-capricious reasons on why I was going to go ahead and recommend a sentence of six months less than I originally intended to recommend, because the defendant had cooperated.
 * * *
 I, frankly, when I heard from the agents, didn't particularly want this defendant's assistance because I figured he knows people who are committing crimes because he is still doing it himself. He is going to tell us something, and we are going to be in the position of having to reward him for this conduct.
 And his guidelines I thought, when I first read the presentence report, were too low. I still think they were too low. But, nonetheless, I took the information, after speaking with his attorney. It did lead to an arrest. And I couldn't in good conscience just say: Well, we took your information. You don't get anything for it. So I went ahead and suggested and recommended to the court give him six months less as a reward for that information.
 That is neither arbitrary nor capricious. That is not the government ... refusing to do something because of the defendant's race, or his religion, or anything else about his background.
 * * *
 But the government's recommendation was based upon my deciding that his cooperation to serve as reward, bounty money, if you will, of six months. And that is valuable in and of itself....
 Further, in its opposition memorandum to Howard's motion, the government provided these reasons for why a downward departure was not warranted in this case:
 
 
 [1]
 The defendant's crime is quite serious. The effects of credit card and bank fraud are felt by virtually everyone in our society
 
 
 [2]
 The defendant has a criminal history that includes a credit card fraud conviction
 
 
 [3]
 The defendant committed the instant offense while he was on probation following his first credit card fraud conviction
 
 
 [4]
 The defendant involved other persons in his criminal conduct, including a bank employee who was his friend. That individual has now been convicted and must spend 5 months in jail as a result of his association with defendant Howard. Two other individuals now have criminal convictions and sentences as a result of their association with defendant Howard
 
 
 [5]
 The amount of money stolen in case is not insignificant; it exceeds $100,000 and although the Court will order that the defendant pay restitution it is unlikely that the full amount of restitution will ever be restored
 
 
 [6]
 The defendant has received a benefit as a result of his cooperation. A sentence that is six months less than the sentence he otherwise would have received is a substantial benefit, especially when the guideline range is only 21-27 months
 
 
 [6]
 The district court concluded the sentencing hearing by commenting, "[I]t's a pretty substantial offense that Mr. Howard committed here. He had an influence over a lot of people, a lot of money. Certainly, a sentence of 21 months on its face doesn't shock me one bit. In fact, I think he has gotten a pretty good deal."
 
 
 [7]
 In denying Howard's motion, the district court explained:
 Now, could a decision be made on such an arbitrary or capricious basis, totally lacking in any constitutional foundation or, stated the other way, clearly violating constitutional law, that a court ought to intervene?
 Well, yes, I guess the answer to that is yes.
 * * *
 But I don't think that's what we have got here. I think the United States is entitled to take the defendant, take his information, consider how trustworthy it is, consider what comes out of it, consider their own prosecutorial objectives, and decide for themselves whether to depart or not depart.
 And as long as it's not done on a basis of a clear violation of constitutional rights, that has to be upheld by the courts. That's my feeling about it.
 And that's also my feeling that the indicated reasons for not granting Mr. Howard downward departure in this area do not rise to a constitutional level, are not arbitrary and capricious, and are within the government's control.
 
 
 [8]
 Howard's remaining arguments are meritless and warrant little discussion. Howard contends that the government's refusal to recommend a downward departure because he was an "incorrigible criminal" was arbitrary and capricious because that rationale: (1) is contrary to the Congressional direction to the Sentencing Commission, (2) is contrary to the language of Sec. 5K1.1, (3) conflicts with the guideline policy against double counting, (4) conflicts with the guidelines' prohibition against using a factor already taken into account by the Sentencing Commission as a basis for departure, and (5) is in conflict with the general rule requiring that the reasons for departure, or a refusal to depart, must be related to a factor from which departure is contemplated. Our analysis of the government's decision not to move for a downward departure demonstrates that the government did not act arbitrarily and capriciously. These arguments do not change that result as they all are contradicted by the relevant case law reviewed supra
 Further, Howard contends that the district court erred when it found it lacked authority to depart downwards under U.S.S.G. Sec. 5K2.0. That section provides in part:
 Under 18 U.S.C. Sec. 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."
 U.S.S.G. Sec. 5K2.0.
 "Cooperation with the government, regardless of whether the government in its discretion moves for a downward departure, is a circumstance that has been adequately taken into account by the Sentencing Commission." United States v. Goroza, 941 F.2d 905, 909 (9th Cir.1991). Section 5K1.1 is evidence that the Commission considered whether substantial assistance to the government should be taken into account in sentencing. Id. Provided the government does not act unconstitutionally in using its discretion under section 5K1.1, the district court may not issue a downward departure under section 5K2.0 for cooperation with the government. Id. Therefore, Howard's argument that the district court should have acted pursuant to section 5K2.0 also fails.